CLARENCE F. GAVIN ET AL. *v.* MINNIE V. JOHNSON
ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued October 11, 1944—decided January 5, 1945.

*Jeremiah D. Shea,* with whom, on the brief, was *Ellsworth B. Foote,* for the appellant (named defendant).

*Harry R. Cooper,* for the appellees (plaintiffs).

MALTBIE, C. J. The defendant Minnie V. Johnson owned two adjoining lots of land on Lupine Street in Wallingford, numbered respectively 31 and 32 on a map on file in the town clerk's office. She sold and conveyed lot 31 to the defendants Mr. and Mrs. Gifford by warranty deed, and at the same time she entered into a written contract to convey to them lot 32, in consideration of a payment on the purchase price then made and other payments to be made in the future. The Giffords went into possession of both lots. They erected a house on lot 32, and, in order to finance it, borrowed substantial amounts on mortgages, which, instead of describing lot 32, on which the house was being erected, described lot 31. The mortgages were later refinanced into a single one, held by a building and loan association. This mortgage was foreclosed by a similar association into which the mortgagee had been converted. After that foreclosure, the plaintiffs bought from the association, as they supposed, the lot with the house upon it, but their deed, following the

provisions of the mortgage, described lot 31. In fact, title to the lot with the house on it had never vested in the Giffords, because of their failure to pay the sums due under the contract of purchase. The plaintiffs brought this action for equitable relief primarily on the ground of mistake, in order to secure title to the lot upon which the house stood. The trial court rendered judgment in their favor, and Mrs. Johnson, to whom we shall refer as the defendant, has appealed.

The defendant begins her attack upon the trial court's conclusions with the contention that, as the bond for a deed gave the Giffords no express or implied authority to encumber lot 32 with a lien before title passed, they could not have given a valid mortgage upon it, citing *Bridgeport People's Savings Bank* v. *Palaia,* 115 Conn. 357, 361, 161 Atl. 526. There is, in that case, language which gives a semblance of support to this claim; but it is to be read in relation to the issue we were then considering, the question whether claimed mechanics' liens arising out of a contract by one in possession of land under an agreement to purchase it had priority over a purchase money mortgage; and we applied the rule that, to give rise to a lien which would affect the vendor's title or have priority over such an incumbrance, there must be specific or implied authority from the vendor to the vendee to encumber the land with the lien. See *Hillhouse* v. *Pratt,* 74 Conn. 113, 117, 49 Atl. 905; *Seipold* v. *Gibbud,* 110 Conn. 392, 395, 148 Atl. 328. But without such authority one in possession of land under an agreement to purchase it may subject his interest in it to a lien which will attach to it when the purchaser takes title, and which may be enforced subject to the prior rights of the vendor. *Hooker* v. *McGlone,* 42 Conn. 95, 102; *Seipold* v. *Gibbud,* supra, 396; *Sheppard* v. *Messenger,* 107 Iowa 717, 720, 77 N. W. 515;

*Wagar* v. *Briscoe,* 38 Mich. 587, 596. We have held that the vendee under a contract of sale has an estate which may be attached, although the interest acquired by the attaching creditor is limited to that of the vendee. *Miller Co.* v. *Grussi,* 90 Conn. 555, 557, 98 Atl. 90. We have recognized that a mortgage may itself be mortgaged. *Saposnick* v. *Kenig,* 121 Conn. 253, 256, 184 Atl. 584. There is nothing in our law which makes inapplicable in this state the general rule that one in possession of real estate under an agreement for its purchase may mortgage the interest he has in it, with the result that upon foreclosure the mortgagee becomes vested with all the rights the vendee has under the agreement. *Hagar* v. *Brainerd,* 44 Vt. 294, 299; *Stoddard* v. *Whiting,* 46 N. Y. 627, 632; *Sinclair* v. *Armitage,* 12 N. J. Eq. 174; 41 C. J. 374, § 163.

The trial court has found that the Giffords believed that they were erecting the house on the lot to which they had full title, and that the description of the other lot in the mortgages was the result of mutual mistake. The defendant maintains that the court could only have found upon the evidence that the Giffords intentionally built the house on the lot on which it stood. If, as the court found, the description in the mortgages of the other lot was the result of a mutual mistake, the mortgagees would have had a right to have the mortgages reformed to carry out the real intent of the parties. *Cherkoss* v. *Gasser,* 123 Conn. 368, 370, 195 Atl. 737. If, however, the Giffords knew the true situation, but nevertheless gave the mortgages on the lot of land other than that on which the house stood, they would not be permitted to defeat the mortgagees' right to reformation on the ground that the mistake was not mutual. *Home Owners' Loan Corporation* v. *Stevens,* 120 Conn. 6, 10, 179

Atl. 330. At the time the mortgages were given the deed to lot 31 had been recorded, but the contract to sell lot 32 was not recorded until some years later. Even if a close examination of the map and other documents, such as tax lists, in the town clerk's office and a study of their relationship to the actual situation on the land would have disclosed the error in the mortgages, a failure to discover it certainly would not justify us in holding that the mortgagees had been guilty of negligence which would debar them from relief, in the absence of any finding to that effect. *Home Owners' Loan Corporation* v. *Sears, Roebuck & Co.*, 123 Conn. 232, 242, 193 Atl. 769.

Both the association, which after foreclosure deeded lot 31 to the plaintiffs, and they were mistaken in the assumption that the former was conveying to the latter the lot with the house upon it; and under these circumstances, the plaintiffs succeeded to the equitable right to a reformation which their grantor had as against the Giffords. *Andrews* v. *Charon*, 289 Mass. 1, 7, 193 N. E. 737; note, 89 A. L. R. 1444; and see *Chamberlain* v. *Thompson*, 10 Conn. 243, 253; *Stedwell* v. *Anderson*, 21 Conn. 139. That when they took their deed the agreement for the sale of lot 32 had been recorded would not so change the situation as to debar them from relief, for that in no way referred to the house and, obviously, as the trial court states in the finding, it would not be notice to them that the house stood on the lot in which the Giffords had only the interests of a vendee under an agreement of purchase. No doubt the plaintiffs might have secured a return of the consideration they had paid the association for the purchase of the lot and a cancellation of the instruments involved in that transaction; *Home Owners' Loan Corporation* v. *Nasiatko*, 129 Conn. 19, 25, 25 Atl. (2d) 661; but they were not restricted to such

a remedy, particularly as, according to the finding, they had spent some $900 in improving the house after they went into possession of it.

Their rights growing out of the remedy by way of reformation would not, however, in themselves avail against the defendant, for the interests of the Giffords and of all who succeeded them in lot 32 were held subject to the terms of the contract of sale. The Giffords had paid $50 to the defendant at the time the contract was made and had made other payments on the contract so that the amount due her was reduced to $190, and they had also paid her interest and discharged taxes on the premises, but they had made no payments since 1938. That they were in default did not, however, put an end to their rights or the rights of those who succeeded to their interest, but only put it in the power of the defendant to enforce the forfeiture. *Miller Co.* v. *Grussi,* supra.

In the latter part of June, 1941, a prospective purchaser of the lot which did not have the house upon it began negotiations with the Giffords and the defendant, and, as a result, on July 2, 1941, the defendant first discovered that the house was on lot 32. Negotiations with the prospective purchaser were at least temporarily suspended and arrangements were made for a meeting of interested parties at the town clerk's office the next forenoon. Before that time the defendant procured from Mr. and Mrs. Gifford a quitclaim deed in which they released to her all the interest they had in lot 32 by reason of the contract of sale. This deed made no reference to the house standing on the lot. The trial court made findings as to the circumstances surrounding that transaction and concluded that the deed was procured by means of fraud and deceit deliberately practiced on the Giffords and the plaintiffs and that the deed should be set aside

because of the circumstances surrounding its execution. If the only elements to be considered are those embodied in these findings, it would be difficult to sustain the conclusion, because statements of fact essential to it are not supported by any evidence. But there is another ground for holding that the quitclaim deed cannot avail the defendant.

The rights of a vendor under a contract of sale of real property are closely analogous to those of a mortgagee; in case of default the proper procedure to enforce a forfeiture is by an equitable proceeding in the nature of a foreclosure, and in such a proceeding the law gives effect to the incidents of the mortgage relationship except in those respects wherein the nature or terms of the contract of sale make them inapplicable. *Bronson* v. *Leibold,* 87 Conn. 293, 297, 87 Atl. 979; note, 77 A. L. R. 270. One of the most important aspects of that relationship is expressed in the maxim, "Once a mortgage, always a mortgage." *French* v. *Burns,* 35 Conn. 359, 363. This maxim primarily applies to any agreement embodied in or contemporaneous with the execution of the mortgage, and its purpose is to protect the debtor who, under circumstances of hardship or necessity, might be an easy prey to those who sought to exact inequitable conditions. 3 Pomeroy, Eq. Jur. (4th Ed.), p. 2826, note; 3 Wiltsie, Mortgage Foreclosure (5th Ed.), p. 1709. Because of this need to protect the debtor from imposition, equity has extended the rule in a modified form to agreements made by the mortgagor after the execution of the mortgage in which he surrenders or hampers his right of redemption; if such an agreement is made upon a fair consideration, voluntarily and without fraud or imposition, it will be sustained; but equity will scan with care any transaction by which a mortgagor surrenders his right of redemption, and, if it finds that

he has not received a substantial consideration or that unconscionable advantage has been taken of him or inequitable conduct practiced upon him, the transaction will be treated as null and void. *Cohn* v. *Bridgeport Plumbing Supply Co., Inc.,* 96 Conn. 696, 704, 115 Atl. 328; *Villa* v. *Rodriguez,* 12 Wall. (79 U. S.) 323, 339, sub nom. *Alexander* v. *Rodriguez,* 20 L. Ed. 406; 3 Wiltsie, op. cit., p. 1716; 1 Jones, Mortgages (8th Ed.), p. 528.

Where a vendor of land secures from a vendee a release of the latter's rights under the contract, there is no reason why this principle should not apply and every reason why it should. If we give to the defendant the benefit of every correction in the finding to which she is entitled, it remains true that the Giffords could have asserted, before giving the deed to her, whatever rights she might thereafter claim under it; that they were entitled to an opportunity to redeem the property by satisfying any demands that might be due under the contract of sale; that they trusted her as their friend; that neither of them was physically well; that, knowing about the mistake and in anticipation of a meeting of interested parties to be held evidently in the hope of reaching some solution of the difficulty, she hastily secured the execution of the quitclaim deed; and that they received no consideration whatever for the surrender of their rights. These circumstances afford sufficient basis for the conclusion of the trial court that the defendant, knowing the situation and of the interests of the Giffords, the association mortgagee and the plaintiffs in lot 32 and the house thereon, sought to take an unconscionable advantage of them. *Bronson* v. *Leibold,* supra, 299. It properly held that the quitclaim deed from the Giffords to the defendant was void; and that the plaintiffs, entitled against the Giffords and the association

to such remedies by way of reformation as would give them title to lot 32, thereby, in equity, became the successors to the Giffords as regards their interests under the bond for a deed, with the right to secure a conveyance of the lot upon satisfying any proper obligation due the defendant under the agreement.

This conclusion sustains in the main the decision of the trial court. There are, however, certain respects in which that judgment is incorrect. These do not materially affect the right of the plaintiffs, and, while it is true that neither the plaintiffs nor the Giffords have appealed and that no questions as to them have been raised, modifications necessary to work out the equitable rights of the parties should be made. The judgment provides that, upon tender to the defendant of the amount due her and tender to the defendant administrator of the estate of Mr. Gifford, who has died, and to the defendant conservator of the estate of Mrs. Gifford, who has been adjudged incompetent, to each, one-half of a sum representing the difference between the value of lot 32 and the amount paid the defendant, she should convey that lot to the plaintiffs free and clear of any incumbrances. The basis upon which relief is accorded the plaintiffs is that the mortgages given by the Giffords by mistake described lot 31 instead of lot 32 and that the mortgages and the deed to the plaintiffs should be reformed so that a description of lot 32 would be substituted in them for that of lot 31. Relief of this nature requires that the title to lot 31 should be left in the Giffords or those who represent them. The judgment should be modified by omitting the provision that the plaintiffs should tender the representatives the amounts it specifies and in place thereof providing that the plaintiffs, on receiving a deed to lot 32 from the defendant, should exe-

cute and deliver a proper deed of lot 31, conveying a one-half interest therein to Mrs. Gifford and the other one-half interest to the heirs of Mr. Gifford.

There is error in part, the judgment is set aside and the case is remanded for rendition of judgment in the same terms as on file except for the modification directed in this opinion.

Costs in this court are to be taxed to the appellees as prevailing parties.

In this opinion the other judges concurred.